IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMANDA MADSEN,<br><br>**Plaintiff,**<br><br>v.<br><br>NICK SWALLOW, UTAH HIGHWAY PATROL, and SALT LAKE COUNTY,<br><br>**Defendants.** | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:13-cv-300-PMW<br><br><br><br>Magistrate Judge Paul M. Warner |

All parties in this case have consented to United States Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is Nick Swallow ("Swallow") and the Utah Highway Patrol's ("UHP") (collectively, "Defendants")[2] motion for summary judgment.[3]  The court previously held oral argument on the motion.[4]  Justin D. Heideman appeared on behalf of Amanda Madsen ("Plaintiff").  Meb W. Anderson and Gregory M. Soderberg appeared on behalf of Defendants.  At the conclusion of the hearing, the court took the motion under advisement.  After carefully considering the parties'

---

[1] *See* docket no. 17.

[2] The other named defendant, Salt Lake County, was previously dismissed from this case.  *See* docket no. 10.

[3] *See* docket no. 29.

[4] *See* docket no. 41.

written submissions, as well as the arguments presented by counsel at the hearing, the court issues the instant Memorandum Decision and Order.

## BACKGROUND

The following facts are taken from deposition testimony and a dash-cam video from Swallow's vehicle ("Video"). Plaintiff admitted in her deposition that the Video accurately depicts the arrest and the events surrounding the arrest.

On the evening of June 18, 2012, Plaintiff went out to dinner with two friends. The three arrived at the restaurant at approximately 7:30 p.m. and left at approximately 11:30 p.m. Plaintiff admitted in her deposition that, at dinner, the three drank two bottles of wine. After dropping off one of her friends, Plaintiff entered I-15 southbound around 600 South in Salt Lake City.

Soon after, Swallow observed Plaintiff's vehicle traveling slower than the speed limit in the fast lane and crossing the double-white lines that divides the fast lane from the carpool lane. Swallow activated his lights, and pulled over Plaintiff's vehicle. Swallow detected the odor of alcohol coming from the car. He also observed that Plaintiff had slow speech and glossy eyes that appeared to be red. Swallow then administered Field Sobriety Tests ("FSTs"), including the Horizontal Gaze Nystagmus test, the walk-and-turn test, the one-leg stand test, and a portable breath test. Swallow observed numerous clues during those tests indicating that Plaintiff was impaired. The portable breath test revealed that Plaintiff had a blood-alcohol level of .099. Consequently, Swallow placed Plaintiff under arrest for driving under the influence ("DUI").

After her arrest, Swallow inquired whether Plaintiff would consent to having her blood drawn for chemical analysis. Plaintiff initially refused, but later provided her consent.

Nevertheless, Swallow obtained a warrant.  Swallow inserted a needle into Plaintiff's arm twice in order to draw her blood.  Plaintiff's post-arrest blood draw revealed a blood-alcohol level of .07%.  As a result of the arrest, Plaintiff's car was towed.  Plaintiff was ultimately never charged with DUI.  However, Plaintiff pleaded guilty to a lane-change violation.

The entire traffic stop, including the FSTs, the DUI arrest, tow of Plaintiff's vehicle, and blood draw, is either visible or audible on the Video.  As noted above, Plaintiff admitted in her deposition that the Video accurately depicts the arrest and the events surrounding the arrest.

On April 30, 2013, Plaintiff initiated this case against Defendants.  Plaintiff alleges causes of action against Defendants related to the traffic stop, the DUI arrest, and the blood draw.  Plaintiff alleges claims for violations of 42 U.S.C. § 1983 based on false arrest and unlawful search and seizure.  Plaintiff further alleges state-law causes of action for negligence, assault, battery, and trespass to chattel.  Finally, Plaintiff alleges a cause of action for negligent training.[5]

## **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quotations and citation omitted).

---

[5] Plaintiff also alleges a cause of action for "Recovery of Fines and Expenses."  However, as noted by Defendants, this is not actually a cause of action but, instead, is a prayer for relief.  As such, the court will not address it in analyzing Plaintiff's causes of action.

3

"'[T]he burden on the moving party may be discharged by "showing"–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (alteration in original). "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quotations and citation omitted).

When addressing a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quotations and citations omitted).  However, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotations and citation omitted).  The Supreme Court has emphasized that "[w]hen the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (quotations and citation omitted) (first and third alterations in original).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.  Where, as in this case, the Video accurately depicts the events at issue (as Plaintiff admitted in her deposition), the court should "view[] the facts in the light depicted by the videotape." *Id*. at 381.

4

## ANALYSIS

In their motion, Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims. Defendants argue that (1) the UHP is entitled to sovereign immunity, (2) Plaintiff's § 1983 claims against Swallow fail as a matter of law, (3) Plaintiff's state law claims fail as a matter of law, and (4) Plaintiff's negligent training claim fails. The court will address those arguments in turn below.

Defendants also argue that the traffic stop was objectively reasonable, based on the presumption that Plaintiff was challenging that stop as part of her case. In response to Defendants' motion, however, Plaintiff asserts that she is not alleging a cause of action for an illegal traffic stop. Instead, Plaintiff asserts that her claims relate to Swallow's conduct subsequent to the stop. As such, the court will not address Defendants' arguments relating to the traffic stop here.

### I. Sovereign Immunity

Defendants first argue that all of Plaintiff's claims against the UHP must be dismissed based on the doctrine of sovereign immunity.

Eleventh Amendment sovereign immunity bars claims against the State of Utah unless the State has waived that immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). The Eleventh Amendment to the Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This provision of the United States

Constitution bars any damages suit against the state, or an arm of the state, unless the state has expressly waived immunity.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Defendants argue that the State of Utah has not waived immunity for civil rights causes of action.  *See* Utah Code § 63G-7-101 *et seq*.; *Buck v. Utah Labor Comm'n*, 73 Fed. App'x 345, 347 (10th Cir. 2003) (holding that the Eleventh Amendment shields the State of Utah from 42 U.S.C. § 1983 claims and state civil rights claims).  Defendants further argue that the UHP, or more specifically the Utah Department of Public Safety, is an arm of the State of Utah and enjoys sovereign immunity.  *See Roberts v. Bradshaw*, No. 2:04-cv-1113 DAK, 2006 U.S. Dist. LEXIS 100372, at *7 (D. Utah Mar. 22, 2006) (holding that, as an arm of the state, the Utah Department of Public Safety is immune from suit under the Eleventh Amendment).  Based on those authorities, Defendants argue that the UHP must be dismissed from this matter, with prejudice, based on Eleventh Amendment sovereign immunity because it is an arm of the State of Utah.

In response, Plaintiff does not dispute that the UHP is entitled to sovereign immunity.  However, she argues that certain of her claims against the UHP (assault, battery, trespass to chattel, negligence, and negligent training) can still be maintained because she alleges that the State of Utah has waived immunity for those claims.

As conceded by Plaintiff, the UHP is entitled to sovereign immunity for all of her claims except those noted above.  Accordingly, the court concludes that Plaintiff's claims against the UHP, other than those claims, are barred by sovereign immunity.[6]

---

[6] The court expresses no opinion about whether there is indeed a waiver of sovereign immunity for any of the claims identified above.  Because there are independent grounds for granting summary judgment on those claims, which will be addressed below, the court has decided to reach the merits of those claims.

### II.  Plaintiff's § 1983 Claims

Plaintiff alleges causes of action under § 1983 based on false arrest and unlawful search and seizure.  Defendants argue that those claims must be dismissed because Swallow is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations and citation omitted).  "Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000) (quotations and citation omitted).

In the Tenth Circuit, there is a three-part inquiry to apply in analyzing a qualified immunity defense.  *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).  First, the court must decide whether the facts alleged by the Plaintiff make out a violation of a constitutional right.  *See id*.  Second, if the plaintiff has established the first step, the court must decide whether the right at issue was clearly established at the time of the alleged violation.  *See id*.

> In determining whether the right was clearly established, the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quotations and citations omitted) (alteration in original).  Third, if the right was clearly established, the court must decide "whether, in spite of the fact that the law was clearly established, extraordinary circumstances–

such as reliance on the advice of counsel or on a statute–so prevented [the official] from knowing that [his] actions were unconstitutional that [he] should not be imputed with knowledge of a clearly established right." *Gomes*, 451 F.3d at 1134 (quotations and citation omitted) (first alteration in original). If a plaintiff fails to satisfy any element of the inquiry, then the defendant is entitled to qualified immunity. *See, e.g.*, *Holland*, 268 F.3d at 1186; *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

As noted above, Plaintiff alleges causes of action under § 1983 based on her arrest and unlawful search and seizure. The court will address those claims in turn.

### A. Arrest

Defendants contend that Swallow is entitled to qualified immunity with respect to Plaintiff's false arrest claim because there was no violation of Plaintiff's constitutional rights. As such, Defendants argue that Plaintiff cannot establish the first prong of the qualified immunity test with respect to her arrest.

When a warrantless arrest is challenged as part of a § 1983 claim, an officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id*. (quotations and citation omitted). Further, "[s]ince probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution such as

dismissal of charges." *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) (quotations and citation omitted). "Probable cause only requires a probability of criminal activity, not a prima facie showing of such activity." *Id*. at 813.

Defendants argue that probable cause existed for Plaintiff's arrest. The court agrees. Early on in the traffic stop, Swallow smelled alcohol coming from the vehicle and noted that Plaintiff had slow speech and blood-shot eyes. Further, Plaintiff admitted to Swallow that she had previously consumed wine. Based on those facts, Swallow asked Plaintiff to exit her vehicle to undergo the FSTs. Those facts justified Swallow to ask Plaintiff to perform the FSTs, which she agreed to do. *See Swanson v. Fields*, No. 93-3083, 1993 U.S. App. LEXIS 33655, at *11-12 (10th Cir. Dec. 20, 1993) (holding that arrest for driving under the influence was supported by probable cause where officer observed smell of alcoholic beverage, bloodshot eyes, poor balance or coordination, and difficulty communicating); *see also Schmerber v. California*, 384 U.S. 757, 768-69 (1966) (determining that probable cause for arrest existed when driver's breath smelled of alcohol and driver's eyes were bloodshot, watery, and glassy). During the FSTs, Swallow observed numerous clues indicating that Plaintiff was impaired. In addition, the portable breath test showed Plaintiff had a blood-alcohol level of .099. Based on all of those facts, the court concludes that any reasonable officer would have believed there was probable cause to arrest Plaintiff for DUI. *See, e.g., Schmerber*, 384 U.S. at 768-69; *Wilder*, 490 F.3d at 815 (concluding that qualified immunity existed for officer arresting driver with moderate odor of alcohol, pinkish and watery eyes, a flushed face, and unusually slow and deliberate speech and hand movements, who refused FSTs, despite actual blood-alcohol content of only .014%). Because

Plaintiff has not established the first element of the qualified immunity test, the court concludes that Swallow is entitled to qualified immunity on Plaintiff's § 1983 claim for false arrest.

### B. Search and Seizure

Defendants contend that Swallow is entitled to qualified immunity with respect to Plaintiff's blood draw because there was no violation of Plaintiff's constitutional rights. As such, Defendants argue that Plaintiff cannot establish the first prong of the qualified immunity test with respect to her blood draw. The court agrees.

To show that a warrant was falsely obtained, a plaintiff must show that the affiant officer knowingly, or with reckless disregard for the truth, included false statements in the affidavit. *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (addressing a § 1983 action and an arrest warrant). Plaintiff has not made such a showing in this case.

In the affidavit, Swallow stated he was trained in Field Sobriety Testing and DUI recognition. The affidavit also stated that Swallow had performed multiple FSTs on the job and in training, Plaintiff's vehicle crossed the double-white lines of the carpool lane, Plaintiff's vehicle's speed was fluctuating between 54 and 58 miles per hour while in the fast lane, Swallow could smell the odor of alcohol coming from her car, Plaintiff had admitted she had consumed wine earlier, Swallow observed numerous clues during the FSTs indicating that Plaintiff was impaired, and the portable breath test was positive for alcohol. All of those statements are supported by the record before the court.

Furthermore, the court notes that, despite the validity of the warrant, it is undisputed that Plaintiff consented to the blood-draw. "Because [Plaintiff] consented to the toxicology exams, she fail[s] to establish that her Fourth Amendment rights were violated." *Amundsen v. Jones*,

533 F.3d 1192, 1201 (10th Cir. 2008). "[A] blood test conducted pursuant to valid consent does not violate the Fourth Amendment." *Id*.

For those reasons, the court concludes that there was no constitutional violation with respect to Plaintiff's blood draw. Consequently, the court concludes that Plaintiff has not established the first element of the qualified immunity test and, as such, Swallow is entitled to qualified immunity on Plaintiff's § 1983 claim for unlawful search and seizure.

### III. Plaintiff's State Law Claims

Plaintiff alleges state-law causes of action against Defendants for (A) assault, battery, and trespass to chattel; and (B) negligence.

#### A. Assault, Battery, and Trespass to Chattel

Defendants argue that these claims are barred by the Utah Governmental Immunity Act ("UGIA"). When a governmental entity asserts immunity under the UGIA, a court applies a three-part test to determine whether immunity applies: "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Thayer v. Washington Cnty. Sch. Dist.*, 285 P.3d 1142, 1145 (Utah 2012) (quotations and citation omitted).

As to the first part, Defendants note that a government function "includes each activity, undertaking, or operation performed by a department, agency, employee, agent, or officer of a governmental entity . . . [and] includes a . . . failure to act." Utah Code § 63G-7-102(4)(b)-(c). The court concludes that Swallow's actions as a UHP Officer are a government function under the test for immunity under the UGIA.

As to the second part, Defendants assert that blanket immunity has not been waived for assault, battery, or trespass to chattel. *See* Utah Code § 63G-7-301(2)-(4), (5)(b); *P.J. v. Utah*, No. 2:05CV00739 PGC, 2006 U.S. Dist. LEXIS 40393, at *8 (D. Utah June 16, 2006) (stating that the UGIA does not waive immunity for intentional torts). The court agrees and concludes that Plaintiff's claims against Defendants for assault, battery, and trespass to chattel are barred by the UGIA.[7]

### B. Negligence

Defendants argue that Plaintiff's negligence claim fails because Swallow did not breach any duty he owed to Plaintiff when he arrested her and drew her blood. The court agrees.

As noted by Defendants, a police officer in Utah may make an arrest without a warrant for DUI. *See* Utah Code § 77-7-2(2). The force used to make an arrest must be reasonable. *See* Utah Code § 77-7-1, -7. A police officer is justified in using the amount of force necessary to make an arrest. *See Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (involving an excessive force claim under the Fourth Amendment).

The court concludes that Swallow did not breach any duty to Plaintiff. As indicated above, the record demonstrates that probable cause existed for Plaintiff's arrest. Further, the blood draw was authorized by a warrant and consent. In addition, there is no evidence indicating

---

[7] With respect to Plaintiff's trespass to chattel claim, she asserts that the UGIA specifically waives immunity for that claim. That argument is without merit. Defendants correctly note in their reply that Plaintiff relies upon a statute that is not applicable to her claim. Utah Code section 63G-7-301(2)(c), cited by Plaintiff, applies to negligent damage of property while it is in the possession of any government entity that is seized for the purpose of forfeiture. *See* Utah Code § 63G-7-301(2)(c). Defendants note that, in this case, Plaintiff's vehicle was in the possession of the towing company when the alleged damage occurred, not in the possession of either Swallow or the UHP. Defendants further note that Plaintiff's vehicle was not seized to be forfeited.

that Swallow used more force than necessary when arresting Plaintiff or drawing her blood. In sum, the record evidence shows that Swallow acted just as any reasonable and competent officer would have under the circumstances surrounding Plaintiff's arrest and blood draw.

For these reasons, the court concludes that Plaintiff's claim for negligence fails and that Defendants are entitled to summary judgment on that claim.

### IV. Negligent Training

Plaintiff also asserts a cause of action for negligent training. Defendants argue that there is no evidence in the record indicating that Swallow was not adequately trained. Defendants assert that that all of the undisputed evidence shows that Plaintiff's arrest was justified and that Swallow was highly trained in recognizing impairment, performing FSTs, collecting evidence of impairment, and drawing blood. Defendants note that Plaintiff did not depose any superior or training officer and has failed to come forth with any evidence indicating that Swallow was not adequately trained.

In response, Plaintiff contends that while it is undisputed that Swallow did receive training, his training is necessarily insufficient because he ineffectively evaluated the circumstances to determine whether probable cause existed to justify an arrest and a blood draw. Plaintiff's argument fails. The court has already concluded that probable cause existed to justify Plaintiff's arrest. The court has also concluded that there was no constitutional violation with respect to Plaintiff's blood draw. Furthermore, as noted by Defendants, Plaintiff did not depose any superior or training officer in this case and has simply failed to point to any evidence in the record indicating that Swallow was negligently trained. For those reasons, the court concludes

that Plaintiff's claim for negligent training fails and that Defendants are entitled to summary judgment on that claim.

## CONCLUSION AND ORDER

Based on the foregoing, the court concludes that Defendants are entitled to summary judgment on all of Plaintiff's causes of action.  Accordingly, Defendants' motion for summary judgment[8] is **GRANTED**.  All of Plaintiff's claims in this case are **DISMISSED WITH PREJUDICE**.  The Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED**.

DATED this 28th day of January, 2015.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[8] *See* docket no. 29.